UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | 2:18-CR-111 |
| ) | |
| vs. ) | |
| ) | |
| JULIUS LEON DITTO, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**REPORT AND RECOMMENDATION**

Defendant, Julius Leon Ditto ("Ditto"), has filed a Motion to Suppress [Doc. 19]. The United States filed a Response in Opposition [Doc. 22]. This matter is before the Court pursuant to 28 U.S.C. 636(b) and the standing orders of the District Court for a Report and Recommendation.

On Tuesday, March 19, 2019, the Court conducted an evidentiary hearing on Defendant's motion. Present at the hearing were Defendant, his counsel, Donald E. Spurrell, Esq., and Assistant United States Attorney Thomas McCauley, Esq. Testifying at the hearing was Officer Trevor Salyer. This matter is now ripe for resolution. For the reasons stated herein, the undersigned RECOMMENDS the Motion to Suppress be DENIED.

**I.  Procedural Background**

On August 15, 2018, a federal grand jury returned an indictment against Ditto, charging him with being a felon in possession of a weapon, specifically a DMPS Panther, .223 caliber AR-15 rifle, in violation of 18 U.S.C. § 922(g)(1) [Doc. 1]. On December 19, 2018, Ditto filed a Motion to Suppress [Doc. 19], arguing that the traffic stop violated his Fourth Amendment rights. The United States responded [Doc. 22] that the officer had sufficient probable cause to effect the traffic

1

stop. The hearing on this motion was originally set for January 9, 2019 but was continued until March 19, 2019 based on Defendant's motion to continue [Doc. 23].

## II.     Findings of Fact

On July 4, 2018, Officers Trevor Salyer and Dustin Johnson, officers with the Elizabethton Police Department Vice Unit, were surveilling a neighborhood off of Broad Street in Elizabethton, Tennessee. The officers observed a silver BMW sedan traveling toward them on Broad Street toward the intersection with West Elk Avenue. This intersection involves a Y-type interchange, with Broad Street merging into West Elk, necessitating multiple sets of traffic lights to control traffic. As a car of interest coming from the surveilled location, the officers chose to follow the vehicle in hopes of investigating it further. When the BMW reached the intersection, the officers observed it make a wide turn from Broad Street onto West Elk, with the left-side tires of the vehicle crossing the double yellow lines on West Elk before correcting back within the right lane. This was the first violation of Tennessee Code Annotated § 55-8-123.

The officers continued to follow the BMW down West Elk. Less than a mile down the road, they observed the car drift again toward the center yellow lines, this time with the left wheels driving directly on the center lines. This was the second violation. Shortly after the BMW corrected back into its lane, the officers observed the car again driving over the center yellow lines. *See* Exhibit 1, Timestamp 08:35:10. This is the third violation. At this point, the officers effected a traffic stop on the BMW for a violation of Tenn. Code Ann. § 55-8-123, a failure to maintain lane. After making contact with the driver, Ditto, the officers learned that he had an outstanding warrant from the United States Marshals Service for a violation of probation. As Officer Salyer placed Ditto under arrest, he observed a rifle round fall out of Ditto's lap, leading Officer Salyer to inquire whether there were any weapons in the vehicle. Ditto advised that there was a gun in the back seat.

2

Upon a search of the vehicle, the officers found an AR-15 rifle with a loaded magazine and a box of ammunition in the vehicle.

**III.  Analysis**

Defendant argues that the actions that the officers observed, specifically the three occurrences of driving on or over the center yellow lines, did not amount to probable cause to effect the traffic stop and that the gun and ammunition found as a result should be suppressed. The United States responded that the officers had probable cause to effect the stop under the plain language of the statute as interpreted by the Tennessee state court and the Sixth Circuit.

It is undisputed that an officer may effect a traffic stop when he has "probable cause to believe that a traffic violation has occurred." *Whren v. United States*, 517 U.S. 806, 810 (1996). This results in a "fact-dependent determination [that] is made from the totality of the circumstances and includes a realistic assessment of the situation from a law enforcement officer's perspective." *United States v. Warfield*, 727 F. App'x 182, 186 (6th Cir. 2018) (quoting *United States v. Ferguson*, 8 F.3d 385, 391-92 (6th Cir. 1993)) (internal quotation marks omitted). Therefore, "the inquiry for purposes of determining the existence of probable cause does not require that the Court affirmatively find that defendants violated a traffic law." *United States v. Howard*, No. 3:18-CR-29-TAV-HBG, 2018 WL 6061439, at *3 (E.D.Tenn. 2018). In this case, officers relied on Tenn. Code Ann. § 55-8-123, which in part states:

> Whenever any roadway has been divided into two (2) or more clearly marked lanes for traffic, the following rules, in addition to all others consistent with this section, shall apply:
>
> (1) A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from that lane until the driver has first ascertained that the movement can be made with safety;…

3

Case 2:18-cr-00111-PLR-DHI Document 31 Filed 03/22/19 Page 3 of 6 PageID #: 86

In interpreting this statute, the Tennessee Supreme Court has recently noted that "[c]learly, the primary purpose of Section 123(1) is to enhance highway safety. Just as clearly, a motorist must be allowed to leave her lane of travel in order to avoid obstructions or other dangers." *State v. Smith*, 484 S.W.3d 393, 407 (Tenn. 2016). That Court further agreed with the Ohio Court of Appeals' observations on a similar statute: "Common sense dictates that the statute is designed to keep travelers, both in vehicles and pedestrians, safe." *Id.* This focus on public safety and the plain language of the statutes led that Court to hold "that Section 123(1) is violated when a motorist strays outside of her lane of travel when *either* (1) it is practicable for her to remain in her lane of travel *or* (2) she fails to first ascertain that the maneuver can be made with safety…Thus, even minor lane excursions may establish a violation of Section 123(1) whether or not the excursion creates a specific, observed danger." *Id.* at 408 (emphasis in original). While the interpretation of the Tennessee Supreme Court is not binding on this Court, it is persuasive.

The Sixth Circuit has also interpreted factual scenarios relating to this statute, Tenn. Code Ann. § 55-8-123(1). For example, that Court found in *United States v. Freeman* that a motor home crossing briefly into the emergency lane "is insufficient to give rise to probable cause" of a violation of the statute. 209 F.3d 464, 466 (6th Cir. 2000). The Sixth Circuit has also held that what was "essentially a slow lane change" also did not violate the statute. *United States v. Gross*, 550 F.3d 578, 583 (6th Cir. 2008). However, in *United States v. Howton*, the Sixth Circuit found probable cause for a traffic stop based on a violation of a similar Kansas statute[1] when the defendant's vehicle crossed the right lane marker onto the shoulder twice. 260 F. App'x 813, 816 (6th Cir. 2008).

---

[1] "A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety." Kan. Stat. Ann. § 8-1522(a).

4

At the hearing, Defendant commented on the pretextual nature of the stop, as Officer Salyer admitted that he began following Defendant as part of his vice investigation. However, the Sixth Circuit is clear that "[r]egardless of the subjective motivations of the officer, so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful." *Gross*, 550 F.3d at 483 (quoting *Freeman,* 209 F.3d at 466) (internal quotation marks omitted).

In this case, the officer testified that he witnessed Defendant cross the center yellow lines when making a turn onto West Elk Avenue. He also noted the dangerousness of that turn, stating that it is a complicated exchange and that there have been severe wrecks at that interchange, including a head-on collision. Officer Salyer also testified that he witnessed Defendant drive on top of the center yellow lines before his in-car camera began recording. As visible on the recording, Defendant again drifts toward the center lane, his left-side tires again driving on top and crossing the center yellow lines before correcting back into his lane. At this point, according to the officer's video, he and Defendant are going approximately 40 miles per hour.

This is not a case of Defendant crossing into the emergency lane as in *Freeman.* Here, he was crossing into the opposite lane of travel. Nor was Defendant slowly changing from one lane to another, as in *Gross*. This case is even distinguished from *Howton*, in that Defendant was crossing the center lane lines, putting oncoming traffic at risk. There is no evidence of any circumstance "that would have made it not 'practicable' for [Defendant] to drive the vehicle within a single lane," as the weather was clear and there were no obstructions on the roadway that Defendant had to avoid, as evidenced by the video. *United States v. Randall*, 62 F. App'x 96, 100 (6th Cir. 2003); *see* Exhibit 1. In considering the concern for public safety, Defendant violated the

5

plain language of Section 123 three times, giving Officer Salyer sufficient probable cause to effect a traffic stop.

**IV. Conclusion**

Because the undersigned finds that officers had sufficient probable cause to effect the traffic stop on Defendant, the undersigned **RECOMMENDS** that Defendant's Motion to Suppress [Doc. 15] be **DENIED** for the reasons outlined herein.[2]

Respectfully Submitted,

s/Clifton L. Corker
United States Magistrate Judge

---

[2] Any objections to this report and recommendation must be served and filed by **April 5, 2019**. Fed. R. Crim. P. 59(b)(2). Failure to file objections within the time specified waives the right to review by the District Court. Fed. R. Crim. P. 59(b)(2); *see United States v. Branch*, 537 F.3d 582 (6th. Cir. 2008); *see also Thomas v. Arn*, 474 U.S. 140, 155 (1985) (providing that failure to file objections in compliance with the time period waives the right to appeal the District Court's order). The District Court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive, or general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).